```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/9/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AARON GROSS, *et ano.*,                                    :
                                                           :
                                  Plaintiffs,              :
                                                           :
            -v-                                            :
                                                           :
MADISON SQUARE GARDEN ENT.                                 :
CORP.,                                                     :
                                                           :
                                  Defendant.               :
------------------------------------------------------------X

**REPORT &
RECOMMENDATION**

23-CV-3380 (LAK) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Lewis A. Kaplan, United States District Judge:**

Plaintiffs Aaron Gross and Jacob Blumenkrantz (together, "plaintiffs") bring this action against defendant Madison Square Garden Entertainment Corp. (n/k/a Sphere Entertainment Co.) ("MSG") under the Class Action Fairness Act, alleging that MSG unlawfully uses the biometric data it collects from consumers via facial recognition technology to selectively remove attorneys and their clients who have commenced litigation against MSG from its venues, thus profiting by deterring litigation and reducing its litigation expenses. Pending before the Court is MSG's motion to dismiss plaintiffs' Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion should be granted in part and denied in part.

## I.    BACKGROUND

### A. Factual Background

The following allegations, drawn from the Second Amended Complaint ("SAC"), sources cited therein, and judicially noticeable matters, are assumed to be

true for the purposes of adjudicating the pending motion.  *See, e.g., Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 344–45 (S.D.N.Y. 2020), *aff'd*, 2022 WL 274507 (2d Cir. Jan. 31, 2022).

## 1. The Parties

Gross, a New York State resident, purchased a ticket for and attended a concert at Madison Square Garden on or about February 10, 2022.  SAC ¶ 15. Similarly, Blumenkrantz, also a New York State resident, purchased a ticket for and attended a concert at Madison Square Garden on or about August 18, 2022.  *Id.* ¶ 17.  Both plaintiffs allege that their biometric identifier information—*i.e.*, any information based on a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" (a "biometric identifier") that can be used to identify individuals, N.Y.C. Admin. Code § 22-1201—was collected, retained, stored, and shared or otherwise transacted in by MSG, and that plaintiffs did not provide consent for MSG to sell, lease, trade, or share their biometric data.  *Id.* ¶¶ 16, 18.  Neither plaintiff alleges that they were banned, ejected, or otherwise barred from attending the concerts at Madison Square Garden or any other MSG venue, nor do they allege that any biometric data collected was sold to a third party.

MSG, through its subsidiaries, owns and/or operates several entertainment venues of renown in New York City, including Madison Square Garden, Radio City Music Hall, and the Beacon Theater.  *Id.* ¶ 21.  Each year, millions of New Yorkers and others from across the globe travel to attend sporting and entertainment events at MSG venues.  *Id.* ¶ 24.

### 2.  MSG's Use of Biometric Data

MSG—like many other private corporations, commercial establishments, and the United States government, *id.* ¶¶ 29–31 & n.3—has used and currently uses facial recognition technology at its venues to identify or recognize a person based upon biometric identifiers.  *Id.* ¶ 28.  MSG has also used facial recognition technology to remove individuals from its venues whose prior misconduct at the venues has resulted in their being identified as a security risk.  *See* Class Action Complaint ("Compl.") ¶ 32, *Aaron Gross v. Madison Square Garden Ent. Corp.*, Index. No. 651533/2023, NYSCEF Doc. No. 1.[1]

### 3.  New York City's Biometric Data Protection Law

In July 2021, in response to the increased use of biometric technology by private corporations, the New York City Council enacted the New York City Biometric Identifier Information Protection Code ("NYC Biometrics Law") to address the unique consumer protection concerns that have arisen from developments in facial recognition and other biometric technology, specifically, concerns that private biometric databases "may be sold, shared, or used in ways that the consumer does not understand or consent to."  SAC ¶¶ 31–32 (brackets omitted) (quoting Council of the City of New York, Comm. on Consumer Affs. & Bus. Licensing, Committee Report of the Infrastructure Division & the Governmental Affairs Division, *Oversight: Facial Recognition Technology and*

---

[1] The state complaint is included as an attachment to MSG's notice of removal of this action to this Court.  *See* Dkt. No. 1-1.

*Biometric Data Collection in Businesses and in Residences* ("Committee Report"),
T2019-5135 (Oct. 7, 2019)).

### 4. MSG's Attorney Policy

MSG has used and currently uses facial recognition technology to collect, use,
and share biometric data at its venues. *Id.* ¶ 35. Specifically, MSG uses a facial
recognition technology system to collect and maintain a database of biometric
identification information from all individuals who attend events at, or otherwise
patronize, MSG venues. *Id.* ¶ 36. This database includes biometric data associated
with persons previously banned from its venues. *Id.* When a person enters an MSG
venue, the individual's data is compared against the banned persons database to
determine whether there is a potential match. *Id.*

In June 2022, MSG instituted a policy (hereinafter, "biometric policy" or "the
Policy") that permits the use of facial recognition technology to identify attorneys
actively pursuing litigation against MSG and who are prohibited from entering
MSG venues while the litigation is ongoing. *Id.* ¶¶ 38–39. As part of MSG's
database of banned individuals, MSG also maintains the banned attorneys'
biometric data, which is similarly compared against all individuals who visit MSG
venues. *Id.* ¶ 40. Plaintiffs allege that the Policy was implemented "to publicly
humiliate and intimidate [those] persons subject to it," and this implementation is
critical to "maximizing the deterrent effect and accordant pecuniary value of the
Policy," *id.* ¶ 42, whereas MSG, through its representatives, has described the
Policy as "a straightforward policy that precludes attorneys from firms pursuing

4

active litigation against the Company from attending events at our venues until that litigation has been resolved." *Id.* ¶ 39 & n.4.

### B. Procedural History

On March 24, 2023, Gross filed the present action in the Supreme Court of the State of New York, in New York County, alleging violations of the NYC Biometrics Law and New York Civil Rights Law ("Civil Rights Law" or "Privacy Law"), as well as a claim for unjust enrichment in a class action complaint. *See* Compl. ¶¶ 71–90, Dkt. No. 1-1.  MSG then removed the action to federal court on April 21, 2023, Dkt. No. 1, and moved to dismiss the complaint on April 28, 2023. Dkt. Nos. 7–9.  On May 19, 2023, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, the First Amended Complaint was filed, with Blumenkrantz added as a plaintiff and subject matter jurisdiction alleged under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Dkt. No. 13.[2]

Following a meet and confer on May 25, 2023, MSG requested an extension of time to respond to the First Amended Complaint on May 30, 2023, as plaintiffs anticipated filing a Second Amended Complaint ("SAC").  Dkt. No. 14.  The Court granted the extension and denied MSG's prior motion to dismiss as moot the same day.  Dkt. Nos. 15–16.  Plaintiffs first filed the Second Amended Complaint on June 9, 2023, Dkt. No. 18, which they refiled on June 12, 2023, to address a filing error.

---

[2] Plaintiffs allege CAFA jurisdiction because they claim this action "(1) involves millions of putative class members; (2) there is minimal diversity between at least one member of the putative class and the Defendant; and (3) in the aggregate, the claims of Plaintiffs and the putative class exceed the sum or value of $5,000,000, exclusive of costs and interest."  SAC ¶ 12.

Dkt. No. 18.  On June 30, 2023, MSG moved to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6), and filed a memorandum of law and declaration in support of its motion.  Motion to Dismiss, Dkt. No. 19; Memorandum of Law in Support of Defendant's Motion ("Def. Mem."), Dkt. No. 20; Declaration of Shawn Patrick Regan dated June 30, 2023 ("Regan Decl."), Dkt. No. 21.[3]  Plaintiffs filed opposition papers ("Pl. Mem.") on July 21, 2023.  Dkt. No. 23. MSG filed its reply papers on August 4, 2023.  Dkt. No. 25.

The case was referred to me for general pretrial supervision and dispositive motions on May 11, 2023.  Dkt. No. 10.  Discovery has been stayed during the pendency of the motion.  Dkt. No. 35.

## II.    DISCUSSION

### A. Legal Standards

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a plaintiff must plead facts in his complaint that "state a claim to relief that is plausible on its face" and that satisfy Federal Rule of Civil Procedure 8(a)(2).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3] Attached to the Regan Declaration is a copy of the Second Amended Complaint (Regan Decl. Ex. A), as well as a copy of the decision and order on MSG's motion to dismiss in *Hutcher v. Madison Square Garden Entertainment Corp.*, another suit challenging the Policy.  *See* Regan Decl. Ex. B. (Decision and Order on Motion, *Hutcher*, Index. No. 653793/2022 (N.Y. Sup. Ct. June 26, 2023), NYSCEF Doc. No. 162)).  When citing to the Regan Declaration and attached exhibits, the Court will use the original document pagination rather than the ECF pagination at the top of the page.

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)).  A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, this standard requires a plaintiff's pleadings to sufficiently "nudge[ ] [his] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (cleaned up).  Therefore, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679; *see also Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (complaint insufficient when lacking factual allegations necessary "to give the defendant fair notice of what the claim is and the grounds upon which it rests").

In deciding a Rule 12(b)(6) motion, a court may consider matters of which judicial notice may be taken under Rule 201 of the Federal Rules of Evidence.  *See, e.g., Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773–75 (2d Cir. 1991).  Such matters include documents that are "publicly available" and whose "accuracy cannot reasonably be questioned."  *Apotex, Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016).  These include other cases, such as the filings in the *Hutcher* case,

challenging the Policy.

Finally, dismissals for failure to state a claim are considered to be "with prejudice." *See, e.g., Lynch v. Hanley*, No. 21-CV-25 (GTS) (ML), 2021 WL 2309688, at *2 n.4 (N.D.N.Y. June 7, 2021) (collecting cases and holding that dismissal for failure to state a claim viewed as adjudication "on the merits" of the action, and thus dismissal "with prejudice" appropriate).

**B. Analysis**

MSG argues that all three claims pled in the Second Amended Complaint should be dismissed because (1) plaintiffs fail to state a claim for a violation of § 22-1202(b) of the NYC Biometrics Law; (2) plaintiffs' New York Civil Rights claim is time-barred (as to Gross) and is otherwise without merit; and (3) plaintiffs' unjust enrichment claim is preempted and otherwise fails on the merits. *See* Def. Mem. at 5–14; Def. Reply at 2–10. Plaintiffs counter that the Second Amended Complaint states cognizable claims in all respects. As discussed below, plaintiffs' NYC Biometrics Law claim should survive the motion, but their civil rights and unjust enrichment claims should not.

**1. The Second Amended Complaint States a Claim Under New York City Biometrics Law**

MSG argues that the Second Amended Complaint fails to state a claim for a violation of § 22-1202(b) of the NYC Biometrics Law. Def. Mem. at 5–8; Def. Reply at 2–6. Plaintiffs respond that this claim is cognizable because (1) it alleges that MSG shares biometric data with at least one third party for something of value; (2) it alleges that MSG otherwise profits from the transaction and use of biometric

8

information; and (3) MSG's interpretation of the statute is contrary to its language and intended scope.  *See* Pl. Mem. 7–19.  For the following reasons, plaintiffs have the better of the argument.

 "When interpreting a statute, [courts] begin by giving effect to the text's plain meaning, which is informed by, but 'does not turn solely on,' dictionary definitions." *J.S. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 76 F.4th 32, 38 (2d Cir. 2023) (quoting *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021)); *Lubonty v. U.S. Bank Nat'l Ass'n*, 34 N.Y.3d 250, 255 (2019) (similar).  "Rather, plain meaning 'draws on the specific context in which that language is used, and the broader context of the statute as a whole.'" *J.S.*, 76 F.4th at 38 (citation omitted).  Where the text is ambiguous, courts may look to the statute's legislative history for context, though this cannot overcome the plain meaning of the text.  *J.S.*, 76 F.4th at 38–39 (citation omitted).

### a.  Plaintiffs' Claim that MSG Otherwise Profited From Their Biometric Data Is Consistent with Section 22-1202(b)'s Plain Meaning

The NYC Biometrics Law provides that "[i]t shall be unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information."  N.Y.C. Admin. Code § 22-1202(b).  As MSG observes, this is not a blanket prohibition on the commercial use of biometric data as § 22-1202(a) permits the commercial use, collection, and retention of biometric data with proper notification.  See Def. Mem. at 5; *see also* N.Y.C. Admin. Code § 22-1202(a).  Rather, § 22-1202(b)'s text clearly bars the sale,

exchange, or other means by which an individual or entity may provide biometric identifier information to third parties for something of value.  The issue presented then is whether, as alleged, MSG's sharing of plaintiffs' biometric "identifier" information "in exchange for" something of value is a violation of § 22-1202(b), and/or whether MSG "otherwise profit[ing]" from an exchange of biometric data violates the statute.  *See* Pl. Mem. at 9–13 (arguing that plaintiffs sufficiently state a § 22-1202(b) claim in both ways).

Addressing plaintiffs' first argument regarding the "sharing" provision, while the use of the word "share" in the Second Amended Complaint—*i.e.*, that "MSG shares customer 'identifier' information with third parties," SAC ¶¶ 63, 77—falls within the ordinary meaning of the statute, there is ambiguity as to what constitutes an "exchange" for "value" under the statute.  As plaintiffs note, *Merriam-Webster* has defined "share" as to "partake of, use, experience, occupy, . . . enjoy with others," or "to distribute" to others.  Pl. Mem. at 10 (quoting SHARE, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/share (last visited Jan. 8, 2024)).[4]  Taking plaintiffs' allegations as true for purposes of the motion, MSG's sharing of biometric data with a third party would certainly fall within the statute's scope.  To MSG's point, however, the Second Amended Complaint fails to allege with whom MSG purportedly shares the data, and

---

[4] This is consistent with other definitions of the word.  *See, e.g.,* SHARE, COLLINS ENGLISH DICTIONARY (14th ed. 2023) (defining share as "to use, participate in, enjoy, receive, etc., jointly"; to "give some of [something] to [another] or let them use it"; and as something "owned, allotted to, or contributed by a person or group").

plaintiffs "do not [further] allege that MSG received money . . . from the entity with whom it supposedly 'shared'" the data.  *See* Def. Mem. at 5–6.[5]  Plaintiffs respond that, in exchange for sharing its customers' biometric data with a third party, MSG receives assistance from said third party to implement its facial recognition policies, and consequently receives a financial benefit.  Pl. Mem. at 10.  But while plaintiffs allege that MSG provides biometric data in exchange for assistance implementing its facial recognition system and its biometric policy, *id.*, the crux of their argument is that it is the *eventual* pecuniary benefit it receives that is of value.  *See* SAC ¶¶ 54–65 (describing how MSG "unlawfully" benefits from its biometric policies).  Given that the ordinary meaning of "exchange" is reciprocal, *see, e.g.,* EXCHANGE, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020), such delayed follow-on value cannot be said to be "in exchange for" data.

By contrast, plaintiffs' alternative argument—that MSG "otherwise profits" from sharing biometric data, "by deterring litigation and, in turn, reducing MSG's significant litigation expenses," SAC ¶ 1—is consistent with the plain meaning of the statute, as the text leaves room for any "other[]" benefits gained outside or because of the sale, lease, or sharing of biometric identifier information.  *Id.*  Similarly, the word "profit" means to "advantage," "gain," or "benefit," as well as

---

[5] MSG further argues dismissal is required because it never received payment from the third party with whom it allegedly transacted, "much less 'for profit.'"  Def. Mem. at 5–6.  However, the statutory provision prohibits sharing of biometric identifier information both "in exchange for anything of value" and to "otherwise profit from the transaction."  N.Y.C. Admin Code § 22-1202(b).  Accordingly, whether MSG specifically shared biometric data "for anything of value" is not dispositive.

"monetary gain."  PROFIT, COLLINS ENGLISH DICTIONARY (14th ed. 2023); PROFIT, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020).  Accordingly, this theory passes muster and their claim under § 22-1202(b) should not be dismissed on these grounds at least at this juncture of the case.[6]

### b.  The Legislative History of NYC Biometrics Law Supports Plaintiffs' Claim

Having determined that at least one theory of plaintiffs' NYC Biometrics Law claim is consistent with the plain meaning of the statute, the Court need not address the legislative history as it is intended to provide context where there is textual ambiguity.  *See, e.g., J.S.*, 76 F.4th at 38–39 (legislative history should not overtake plain meaning) (citation omitted).  Legislative history, however, can be helpful to *confirm* statutory meaning.  *See, e.g.*, *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 72 (2d Cir. 2020) (looking to legislative history for "further support" of conclusion).  Accordingly, and given there is not any case law construing this provision as of the date of this Report and Recommendation, *see* Pl. Mem. at 8 & n.1, the Court will briefly address the statute's legislative history.

As discussed, *supra*, the NYC Biometrics Law was enacted in response to rising concerns that the biometric data used to identify individuals for both security and for-profit purposes, Committee Report at 2, "may be sold, shared, or used in

---

[6] While there is a question as to whether MSG does, in fact, profit from the transaction of biometric identifier information, at this stage of the case, plaintiffs have pled enough to state their claim.  Should discovery later establish that there is no tangible benefit it receives, MSG would then be well within its rights to move for summary judgment on this basis.

ways that the consumer does not understand or consent to."  SAC ¶¶ 31–32
(brackets omitted) (quoting Committee Report at 12).  Moreover, as plaintiffs
emphasize, the Committee Report establishes that the Council was concerned with
the sharing of biometric data, as well as its sale.  *See* Pl. Mem. at 8.  The Committee
Report, for instance, notes that "establishments frequently do not inform customers
that facial recognition software is being used, and it is unclear what companies or
businesses do with the data once it is collected."  Committee Report at 14.  The
Report also notes how "[i]nformation on customers, their behaviors and their
purchasing histories can be valuable, and there have been numerous incidents of
companies collecting this information and either selling it to, or having it harvested
by third parties, without the knowledge or consent of consumers."  *Id.*

Additionally, the fact that the Committee Report cites other states' biometric
privacy laws, and that the statute creates a private right of action where a party
"otherwise profited" from the sale, lease, trade, or sharing of another's *biometric
data* (as opposed to Portland, Oregon's ban on private entities' use of facial
recognition technology or to statutes in Texas and California, which do not offer a
private right of action), suggest a clear desire to both empower individual
consumers and to move away from facial recognition legislation that focuses only on
commercial purposes.  *See* Committee Report at 16–19 (summarizing state facial
recognition and biometric laws).

For these reasons, plaintiffs' § 22-1202(b) claim, as it relates to the "otherwise
profits" component of the statute, should not be dismissed.

13

### 2.  Plaintiffs' Civil Rights Claim Should Be Dismissed

MSG argues that plaintiffs' claim under New York Civil Rights Law §§ 50 and 51 fails as a matter of law because Gross's claim is barred by the one-year statute of limitations for privacy claims, and both plaintiffs otherwise fail to allege that MSG's use of biometric data is for commercial use or otherwise "for the purposes of trade" as required under the New York Civil Rights Law.  *See* Def. Mem. at 8–12.  The Court agrees with MSG.

### a.  Gross's Civil Rights Claim Is Time-Barred

New York Law provides a one-year statute of limitations for right of privacy claims.  *See* N.Y. C.P.L.R. § 215(3).  "[A]n action to recover damages for a violation of [New York Civil Rights Law] § 51 must be brought within one year.  'The statute of limitations on Civil Rights Law §§ 50 and 51 claims runs from the date of the most recent violations of the statute.'"  *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 250 (S.D.N.Y. 2019) (cleaned up) (quoting *Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188 (2007)), *aff'd*, 2023 WL 4229913 (2d Cir. June 28, 2023).

MSG argues that Gross's civil rights claim under §§ 50 and 51 should be dismissed because it is barred by the one-year statute of limitations.  *See* Def. Mem. at 8 (citation omitted).[7]  Gross concedes that his claim accrued for more than a year before he filed suit on March 24, 2023, *see* Pl. Mem. at 19 n.8, and thus his civil rights claim should be dismissed as untimely.

---

[7] MSG, in error, states that the Second Amended Complaint was not filed until March 24, 2023, Def. Mem. at 8–9, when in fact, it was the original complaint that was filed on that date.  *See* Dkt. No. 1-1.

### b. Blumenkrantz's Civil Rights Claim Should Also Be Dismissed

Having recommended that Gross's civil rights claim be dismissed on statute of limitations grounds, the Court next turns to the merits of Blumenkrantz's civil rights claim. MSG argues that Blumenkrantz fails to allege facts that would constitute a violation of § 50 of the New York Civil Rights Law. Def. Mem. at 9–12; Def. Reply at 6–8. Plaintiffs counter that Blumenkrantz has adequately pled a claim for violations of §§ 50 and 51. *See* Pl. Mem. at 19–24 (citing Compl. ¶¶ 82–88).

Section 51 creates a private right of action to enforce § 50, which codified a limited right to privacy. *See* N.Y.C.R.L. §§ 50, 51. Section 50 provides:

> A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.

N.Y.C.R.L. § 50. "It is undisputed that to state a claim pursuant to [New York Civil Rights Law] § 51, plaintiffs must allege (1) usage of plaintiff's name, portrait, picture, or voice, (ii) within the State of New York, (iii) for purposes of advertising or trade, [and] (iv) without plaintiff[s'] written consent." Decision and Order on Motion at 2, *Hutcher*, Index. No. 653793/2022 (N.Y. Sup. Ct. June 26, 2023) (quoting *Molina v. Phoenix Sound, Inc.*, 297 A.D.2d 595, 597 (1st Dep't 2002). As plaintiffs observe, MSG does not contest the first, second, or fourth elements of this claim. Pl.

Mem. at 20.[8]  Rather, only the third prong (*i.e.* advertising or trade purposes) is at

issue here.  *See id.*; Def. Reply at 6.  While Section 51 does not define "for the

purposes of trade," the New York Court of Appeals

> has consistently restated several basic principles
> concerning the statutory right of privacy.  First,
> recognizing the Legislature's pointed objective in
> enacting sections 50 and 51, [it has] underscored that the
> statute is to be narrowly construed and "strictly limited to
> nonconsensual commercial appropriations of the name,
> portrait or picture of a living person[.]"  Second, [it has]
> made clear that these sections do not apply to reports of
> newsworthy events or matters of public interest.  This is
> because a newsworthy article is not deemed produced for
> the purposes of advertising or trade.

*Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 441

(2000) (citations omitted).  Similarly, other New York courts have long defined

"advertising purposes" as "use in, or as part of, an advertisement or solicitation for

patronage of a particular product or service," while "'[t]rade purposes' [has been]

more difficult to define, and involves use which would draw trade to the firm."  *Kane*

*v. Orange Cnty. Publ'ns*, 232 A.D.2d 526, 527 (2d Dep't 1996); *see also, e.g.*

*Amusement Indus. Inc., v. Stern*, 693 F. Supp. 2d 301, 314 (S.D.N.Y. 2010) (courts

define use "for the purposes of trade" as use intended to "draw trade to the firm" or

make a profit (citations omitted)).

    Plaintiffs primarily rely on two multidistrict litigation cases—both from the

---

[8] Indeed, as plaintiffs note, "the Complaint alleges that (1) MSG uses the [p]laintiffs' pictures by collecting and processing their images and facial scans by operating its facial recognition system; (2) at MSG's venues in New York; and (3) without the [p]laintiffs' written consent."  Pl. Mem. at 20 (first citing Compl. ¶¶ 4, 83–84; then citing *id.* ¶¶ 13, 15–18, 83; and then citing *id.* ¶¶ 16, 18, 86).

16

Northern District of Illinois, in which plaintiffs brought suit under the Illinois Biometric Information Privacy Act, as well as claims under Virginia, New York, and California law—to support their argument that Blumenkrantz has sufficiently pled his New York Civil Rights claim.  *See* Pl. Mem. at 20–23 (first citing *In re Clearview AI, Inc., Consumer Priv. Litig.* ("*Clearview I*"), No. 21-CV-135 (SJC), 2022 WL 252702, at \*6 (N.D. Ill. Jan. 27, 2022), *motion to certify appeal denied sub nom.*, 2022 WL 823855 (Mar. 18, 2022); then citing *In re Clearview AI, Inc., Consumer Privacy Litig.* ("*Clearview II*"), 585 F. Supp. 3d 111, 1130 (N.D. Ill. 2022), *clarified on denial of reconsideration*, 2022 WL 2915627 (July 25, 2022)).

In *Clearview I*, New York consumers claimed that Macy's use of software company Clearview's searchable biometric database (which was created by using the biometric data pulled from internet photographs) as part of its theft prevention initiative violated §§ 50 and 51.  *See* Pl. Mem. at 22 (citing 2022 WL 252702, at \*1). And in *Clearview II*, consumers alleged that Clearview violated §§ 50 and 51 by using their pictures to create a facial recognition database that it shared with third party companies.  Pl. Mem. at 22–23 (citing 585 F. Supp. 3d at 1130).  But while plaintiffs hail these cases as clear-cut examples of a federal court "analyz[ing]" and ultimately holding that the use of a facial recognition technology (including for theft prevention) is use "for the purposes of trade" within the meaning of §§ 50 and 51, they are inapposite.  Indeed, while the *Clearview I* court held that plaintiffs "sufficiently alleged plaintiffs' biometric information was *necessary* to Macy's loss prevention business model and that [the] biometric information generated profits by

17

reducing the number of stolen goods," *Clearview I*, 2022 WL 252702, at *6 (emphasis added), the plaintiffs have failed to do so here.  Whereas in *Clearview I*, there was a more direct relationship between Macy's use of Clearview's biometric database and Macy's trade purposes because Macy's used the database "for the purposes of" reducing theft, plaintiffs' claim that MSG "deploy[s] the biometric data that it collects from consumers in order to implement the Litigation Deterrent Policy for its own pecuniary benefit," *id.* ¶ 54, is too tenuous to sufficiently state a civil rights claim.  Indeed, if anything, MSG's use of biometric technology to <u>remove</u> banned persons cannot be plausibly understood as seeking to draw trade at its venues.

Furthermore, plaintiffs appear to gloss over the fact that the court declined to dismiss the New York state law claims in *Clearview II* because "[p]laintiffs . . . repeatedly alleged the Clearview defendants developed technology to invade the privacy of the American public for their own profit" by *selling* the data to other companies.  585 F. Supp. 3d at 1130.  Plaintiffs fail to make such allegations here. Rather, plaintiffs characterize MSG as "ma[king] it clear that a principal purpose of its facial recognition technology system is to . . . profit from . . . a litigation deterrent policy," *id.* ¶ 38, and yet the only alleged statement from an MSG representative quoted in the SAC reads that "MSG instituted a straightforward policy that precludes attorneys from firms pursuing active litigation against the Company from attending events at our venues until that litigation has been resolved."  *Id.* ¶ 39 & n.4.  Such allegations, read in the light most favorable to plaintiffs, fail to pass

scrutiny as Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). Moreover, because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.*, dismissal of this claim is also warranted as Blumenkrantz has failed to sufficiently allege that MSG's use of biometric data was "for the purposes of trade."[9]

### 3. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed Because It Is Preempted by New York Civil Rights Law

Finally, MSG argues that plaintiffs' unjust enrichment claim should be dismissed because it is preempted by plaintiffs' civil rights claim and fails on the merits. Def. Mem. at 12–14. Plaintiffs respond that they (1) sufficiently state a claim for unjust enrichment, and (2) are permitted to plead unjust enrichment in the alternative at the pleadings stage. Pl. Mem. at 24–25. Neither of plaintiffs' arguments is persuasive.

---

[9] This recommendation is also consistent with the recent decision and order in *Hutcher*, which addressed whether MSG's use of biometric data and facial recognition technology was "for trade purposes" as required to state a claim under §§ 50 and 51. In *Hutcher*, the court briefly noted (in a two-page decision and order) that "plaintiffs' complaint contain[ed] no factual allegations that [MSG is] using or . . . intend[s] to use plaintiffs' photographs for advertising or trade." Decision and Order on Motion at 2, *Hutcher*, Index. No. 653793/2022 (N.Y. Sup. Ct. June 26, 2023). While plaintiffs argue that the Court should not afford the decision in *Hutcher* any weight due to its limited (*i.e.*, one sentence) discussion of the plaintiffs' civil rights claims, *see* Pl. Mem. at 23–24, the Court cites *Hutcher* as a contemporary case that construes §§ 50 and 51 narrowly, and for its own reasons, reaches the same conclusion here.

19

### a. Plaintiffs' Unjust Enrichment Claim Is Preempted

MSG first argues that plaintiffs' unjust enrichment claim is preempted, citing both federal and state law recognizing the Civil Rights Law's preemptive effect on common law claims based on the unauthorized use of name, image, or personality, including, as relevant here, plaintiffs' biometric data. Def. Mem. at 12–13 (citation omitted). Notably, plaintiffs do not respond to MSG's argument, but instead argue the merits of their unjust enrichment claim in the alternative. *See* Pl. Mem. at 24–25.

As a threshold matter, a court sitting in diversity applies New York choice of law rules. *See, e.g., Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003). Under New York choice of law rules, unjust enrichment claims are governed by the jurisdiction with the "most significant relationship," here being New York given the location of MSG's venues. *See, e.g., Seibel v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 655 F. Supp. 3d 212, 217 (S.D.N.Y. 2023) (citations omitted). The Court will therefore apply New York law to plaintiffs' unjust enrichment claim.[10]

Notably, New York courts have long recognized the Civil Rights Law as "preempt[ing] all common law claims based on unauthorized use of name, image, or personality, including unjust enrichment claims." *Zoll v. Ruder Finn, Inc.*, No. 01-CV-139 (CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004) (citing, *inter alia*,

---

[10] Moreover, "[w]here the parties' briefs assume that New York law controls, . . . such implied consent is sufficient to establish choice of law." *Mensah v. Boeing Corp.*, No. 23-CV-2465 (JLC), 2023 WL 5739012, at *4 n.4 (S.D.N.Y. Sept. 6, 2023) (cleaned up). Here, the parties cite to New York cases in support of their respective positions.

*Hampton v. Guare*, 195 A.D.2d 366, 366–67 (1st Dep't 1993) ("[T]he preemptive effect of the Civil Rights Law is fatal to the . . . causes of action . . . alleging common-law conversion, common-law tort and unjust enrichment where, as here, the plaintiff has no property interest in his image, portrait or personality outside the protections granted by the Civil Rights Law."); *see also, e.g., Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011, at *9 (S.D.N.Y. Mar. 1, 2018) (recognizing New York Civil Rights Law as preempting common law claims based on a right of privacy or publicity (citations omitted)); *Tarazi v. Truehope Inc.,* No. 13-CV-1024 (LAK) (JCF), 2017 WL 5957665, at *15 (S.D.N.Y. July 28, 2017) ("[T]he New York Civil Rights Law subsumes unjust enrichment claims for the unauthorized use of an image or likeness." (citations omitted)), *adopted by*, 2017 WL 5957745 (Nov. 30, 2017).  Indeed, "[t]he Civil Rights Law does not simply cover or define common law claims, it provides an exclusive cause of action for cases such as [ones alleging unjust enrichment].  That is to say, there is *no* cause of action in New York for unjust enrichment arising from alleged unauthorized use of personal image." *Zoll*, 2004 WL 42260, at *4.

Plaintiffs' unjust enrichment claim is thus preempted by the Civil Rights Law.  While plaintiffs' arguments seek to differentiate the "unauthorized use of [plaintiffs'] name, image, or personality" from plaintiffs' biometric data, this is a distinction without a difference.  As plaintiffs themselves plead in the SAC (and as the City codified in its biometric laws), "biometrics are biological or physical characteristics that may be used . . . to identify an individual."  SAC ¶ 27 (citing

21

N.Y.C. Admin. Code § 22-1201).  Specifically, a "'biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." N.Y.C. Admin. Code § 22-1201.  Similarly, facial recognition technology, like that at issue here, "is a category of biometric technology that analyzes facial features to identify a person." *Id.* ¶ 28.  It "operates by detecting an individual's face in person or from an image. A facial recognition technology system then generates a unique face print (similar to a fingerprint) by performing an analysis of facial geometry and other features of the face." *Id.* ¶ 29.  Plaintiffs can thus hardly claim that their biometric data is unlike an image or likeness of them such that it would be immune from preemption.

### b.  Plaintiffs' Unjust Enrichment Claim Also Fails on the Merits

Defendants next argue that even assuming plaintiffs' unjust enrichment claim is not preempted, it fails on the merits because it does not sufficiently plead that MSG conferred a benefit "such that it is against equity and good conscience to permit [MSG] to retain [plaintiffs' biometric data]."  Def. Reply at 9–10; Def. Mem at 13–14.  Plaintiffs counter that they have stated a claim for unjust enrichment.  Pl. Mem. at 24.  Again, MSG has the better of the argument.

"Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of*

*N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (cleaned up) (citation omitted). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 905 (4th Dep't 1999)). Further, "[u]njust enrichment claims are rooted in 'the equitable principle that a person shall not be allowed to enrich [themselves] unjustly at the expense of another.'" *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (2022) (alteration in original). "Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011); *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 119 (1st Dep't 1998) (unjust enrichment stated "where plaintiffs have properly asserted that a benefit was bestowed . . . by plaintiffs and that defendants will obtain such benefit without adequately compensating plaintiffs therefor" (quotation marks and citation omitted)).

Notwithstanding that plaintiffs' unjust enrichment claim is preempted, it also fails on the merits. Plaintiffs argue that the Second Amended Complaint states a claim for unjust enrichment because it alleges that MSG "received benefits from plaintiffs and class members"—specifically, their "highly valuable" biometric data— which "provided MSG with economic, intangible, and other benefits," such that "'it is against equity and good conscience' for MSG to retain those benefits." Pl. Mem. at 24 (quoting Compl. ¶¶ 91–93); *see also* SAC ¶¶ 91–93. Plaintiffs' arguments, however, are unavailing as their unjust enrichment claim does not "contain

sufficient factual matter . . . to state a claim to relief that is plausible on its face."
*Iqbal*, 556 U.S. at 678 (cleaned up) (quoting *Twombly*, 550 U.S. at 570).

For one, plaintiffs' unjust enrichment claim is too attenuated. As the
Supreme Court noted in both *Iqbal* and *Twombly*: "The plausibility standard is not
. . . a 'probability requirement,' but it [does] ask[] for more than a sheer possibility
that a defendant has acted unlawfully." *Id.* (citation omitted). Here, plaintiffs fail
to allege more than sheer possibility. Plaintiffs claim, for example, that MSG
received benefits from plaintiffs in the form of their biometric data, Compl. ¶¶ 90–
91, but fail to specifically allege how MSG used plaintiffs' biometric data to enrich
itself. Similarly, plaintiffs fail to sufficiently plead that MSG was enriched at
plaintiffs' expense. While plaintiffs correctly state that a defendant can be enriched
where it "receives a benefit" besides money or property, Pl. Mem. at 24 (quoting
*Farina v. Bastianich*, 116 A.D. 3d 546, 548 (1st Dep't 2004)), they nonetheless fall
short of alleging that MSG "obtain[ed] [said] benefit without adequately
compensating plaintiffs." *Wiener*, 241 A.D.2d at 119. Plaintiffs also do not allege
that they were removed from the concert venues they attended, *see* SAC ¶¶ 15, 17,
and so, as MSG notes, were able to make full use of the tickets purchased. *See* Def.
Mem. at 14. Nevertheless, plaintiffs ask the Court to conclude that MSG's use of
their biometric data weighs against equity and good conscience while doing little to
help bridge the gaps between MSG's collection of two individuals' biometric data
and the alleged—but unsubstantiated—reduction in MSG's overall costs and profit
increase based on its Policy. *See* SAC ¶¶ 54–58, 91–93; Def. Mem. at 24–25. Such

conclusions, without more, are inadequate to support an unjust enrichment claim.

### c. Plaintiffs Cannot Plead Unjust Enrichment in the Alternative

Lastly, plaintiffs argue in the final paragraph of their memorandum that their unjust enrichment claim cannot be preempted as they are allowed to plead in the alternative.  Pl. Mem. at 25.  Plaintiffs cite only one case to support this proposition.  *See id.* (citing *TOT Payments, LLC, v. First Data Corp.,* to 128 A.D.3d 468, 469 (1st Dep't 2015)).

While Rule 8(d) of the Federal Rules of Civil Procedure permits a party to "set out 2 or more statements of a claim . . . alternatively or hypothetically," in a single count or in separate counts, "regardless of consistency," Fed. R. Civ. P. 8(d)(2)–(3), such alternative claims may be dismissed where they fail to state a claim on which relief can be granted.  *See, e.g., Lee v. Canada Goose US, Inc.*, No. 20-CV-9809 (VM), 2021 WL 2665955, at *9 (S.D.N.Y. June 29, 2021) (quoting *United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 160 (D.D.C. 2011) (dismissing alternative unjust enrichment claim because "[t]he liberal pleading approach of the Federal Rules allows a plaintiff to plead alternative claims, but those claims must have some basis on which relief could be granted")).

Plaintiffs thus cannot advance an alternative unjust enrichment claim for the use of their biometric data as the New York Civil Rights Law is the "exclusive cause of action" for such injuries.  *Zoll*, 2004 WL 42260, at *4.  Moreover, *TOT Payments*—on which plaintiffs' argument relies—did not implicate the New York Civil Rights Law.  Rather, the court there held only that unjust enrichment could be

25

pled in the alternative to a breach of contract claim.  *See TOT Payments*, 128 A.D.3d at 469.  Plaintiffs' reliance on it is thus misplaced.[11]

## III.    CONCLUSION

For the foregoing reasons, MSG's motion should be granted as to the Civil Rights and Unjust Enrichment claims and denied as to the NYC Biometrics Law claim.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  *See* Fed. R. Civ. P. 6(a), (b), (d).  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, United States Courthouse, 500 Pearl St., New York, New York 10007-1312.  Any requests for an extension of time for filing objections must be directed to Judge Kaplan.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v.*

---

[11] Plaintiffs also argue (in a footnote) that because Gross does not assert a Civil Rights Claim, that MSG's preemption argument does not apply to his unjust enrichment claim.  Pl. Mem. at 25 n.12.  This argument also fails as courts do not recognize any "cause of action in New York for unjust enrichment arising from alleged unauthorized use of personal image."  *Zoll*, 2004 WL 42260, at *4.  It is thus irrelevant whether Gross asserts a claim under New York Civil Rights Law.

*Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).


Dated:  January 9, 2024
       New York, New York

_____
JAMES L. COTT
United States Magistrate Judge